### Minimum Wages in Nursing Homes

MARSHALL J. SEIDMAN, Deputy Attorney General and DAVID STAHL, Attorney General, November 6, 1961.—You have requested our opinion as to whether a nursing home, operated for profit, is subject to the provisions of the Act of September 15, 1961, P. L. 1313, to be known and cited as the Minimum Wage Act of 1961. You particularly ask whether such a nursing home is exempted from coverage by section 3(6) of the act which reads as follows:

"As used in this act . . . 'Employee' includes any individual employed by an employer, but shall not include any individual . . . (j) Employed by a non-profit hospital or non-profit nursing home, a religious or charitable organization, or *an institution engaged in the care of the mentally deficient, the aged or infirm.*" (Italics supplied.)

The exclusion of nonprofit nursing homes from the coverage of the law in the first part of this subsection would seem clearly to indicate a legislative intent *not* to exclude nursing homes operated for profit. Some doubt, however, is raised by the general phrase at the end of the subsection, underscored above.

Under these circumstances, we must ascertain and effectuate the intent of the legislature. In determining this intent, we are guided by the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §501 et seq, which commands us that legislation should be liberally construed to effectuate its objects and to promote justice and that the legislature intends to favor the public interest as against any private interest. Article IV, secs. 52(5) and 58, 46 PS §§552-(5) and 558.

In many instances, it is difficult to ascertain the

legislative intent. In this case, the legislature in section 1 of the act specifically declared the policy considerations which impelled it to enact this law:

"Section 1. Factual Background. Employes are employed in some occupations in trade and industry in the Commonwealth of Pennsylvania for wages unreasonably low and not fairly commensurate with the value of the services rendered. Such a condition is contrary to public interest and public policy commands its regulation. Employes employed in such industries are not as a class on a level of equality in bargaining with their employers in regard to minimum fair wage standards and 'freedom of contract' as applied to their relations with their employers is illusory. Judged by any reasonable standard, wages in such industries are often found to bear no relation to the fair value of the services rendered. In the absence of any effective minimum fair wage rates for employes, the depression of wages by some employers constitutes a serious form of unfair competition against other employers, reduces the purchasing power of the workers and threatens the stability of industry. The evils of oppressive, unreasonable and unfair wages as they affect employes employed in the Commonwealth of Pennsylvania are such as to render imperative the exercise of the police power of the Commonwealth for the protection of industry and of the employes employed therein and of the public interest of the community at large in their health and well being."

As the bill which became Act No. 582 was originally passed by the House, nursing homes were subject to the coverage of the Minimum Wage Act of 1961 whether or not they were operated for profit. In the Senate, on second reading, that body specifically excluded nonprofit nursing homes and by necessary implication included nursing homes operated for profit.

The present language of the act was introduced on third reading in the Senate by adding to the above amended language "a religious or charitable organization, *or an institution engaged in the care of the mentally deficient, the aged or infirm.*" Thus, the legislature added the underscored language to a section which already excluded nonprofit hospitals and nonprofit nursing homes, and now was to exclude religious and charitable organizations as well.

The phrase "an institution engaged in the care of the mentally deficient, the aged or infirm" must be interpreted in accordance with the familiar legal principle of ejusdem generis as referring to the same type of institutions specifically excluded in the earlier part of the subsection, namely, nonprofit institutions. It seems clear that the phrase in question was inserted, as is usual in legal draftmanship, as a catchall, to cover organizations or institutions in the same category as those previously enumerated.

Accordingly, we are of the opinion, and you are advised, that nursing homes, operated for profit, are not excluded from coverage under the Miminum Wage Act of 1961.